|  |  |
|---|---|
| MIGUEL LOZADA, SR.,<br><br>     Plaintiff,<br><br>v.<br><br>MPCH, JULIE IRELAND, & DR. KING,<br><br>     Defendants. | No. 17-cv-11393-DLC |

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR SUMMARY JUDGMENT (DKT. 23)**

CABELL, U.S.M.J.

## I.    INTRODUCTION

*Pro se* Plaintiff Miguel Lozada is a prisoner at the Souza-Baranowski Correctional Center in Shirley, Massachusetts ("SBCC"). He contends that he has received inadequate medical care and has brought suit against the prison's health care provider, the Massachusetts Partnership for Correctional Healthcare ("MPCH"), and two individuals employed by or associated with MPCH, Health Services Administrator Julie Ireland and podiatrist Dr. Charles King. MPCH and Ireland move for judgment on the pleadings or in the alternative for summary judgment. For the reasons explained below, the motion for judgment on the pleadings will be <u>allowed</u>

and the complaint will be dismissed against all defendants, without prejudice.[1]

## II.  RELEVANT FACTUAL BACKGROUND

The relevant facts are not disputed.  Lozada is an inmate at the SBCC, part of the Massachusetts Department of Corrections (DOC).  At all relevant times, MPCH was responsible for providing medical services to DOC inmates.  Defendant Ireland is a Registered Nurse and is the Health Services Administrator for MPCH at SBCC.  Defendant King is a podiatrist who was subcontracted by MPCH to provide specialized podiatry services to inmates.  Complaint ¶ 1.

The plaintiff's lawsuit arises from his efforts to obtain relief for longtime medical issues associated with his feet and ankles.  In 2010 Lozada had received custom-molded inserts, a lace-up ankle brace, customized boots, and special high-top shock

---

[1] The defendants contend that the complaint should be dismissed against Dr. King because Lozada has not properly served him in accordance with the pertinent rules of civil procedure.  Because the court is dismissing the complaint on other grounds, and because the defendants do not formally move on Dr. King's behalf, the court does not rule on this claim.  However, the court does note for the plaintiff's edification that the defendants appear to be correct.  The federal and state rules of civil procedure regarding service of process are the same in this regard:  an individual may be served by (1) delivering a copy of the summons and of the complaint to the individual personally, (2) or by leaving a copy of each at the individual's dwelling or usual place of abode, or (3) by delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Mass. R. Civ. P. 4(d)(1); Fed. R. Civ. P. 4(e)(2).   The docket here reflects that the plaintiff served Dr. King by sending him a copy of the complaint through the regular mail rather than by one of the three acceptable methods noted above.  Dkt. No. 4, pg. 2.  Because service was not made on Dr. King in accordance with the pertinent rules, the complaint would be subject to dismissal against him.  *See e.g., Tate v. Galibois,* No. 13-13100-RWZ, 2014 U.S. Dist. LEXIS 5014, *6 (D. Mass. January 14, 2014) (noting that service on a private individual by regular mail is not permitted under Rule 4 of the Federal Rules of Civil Procedure).

absorbent footwear.  In 2014, however, Lozada was transferred from one DOC facility to another and his orthotic devices and special footwear were misplaced during transit and never accompanied him. Complaint ¶¶ 6-11.  Lozada spent the next two years or so trying unsuccessfully to obtain replacement equipment.  In the course of those efforts, he submitted five separate administrative grievances asking for assistance.  (Dkt 24-1, Exhibit A, Affidavit of Linda Farag ("Farag"), ¶¶ 5-11).

Lozada submitted these grievances through a formal DOC grievance process administered by MPCH.  By its terms, the grievance policy covers complaints from inmates concerning medical, dental and mental health services provided by the health vendor staff, subcontractors, specialty referrals, and facilities used by the health vendor.  MPCH's Health Services Administrator (HSA) or a designee has the overall responsibility for handling inmate-patient grievances regarding all health care services.

The grievance process has three steps.  First, the inmate makes an informal complaint by talking to the HSA or their designee.  If the inmate is not satisfied with the response he receives, he can advance to step two, which involves submitting within 10 days a written complaint on an "Inmate Medical and Mental Health Grievance & Appeal Form" (the Appeal Form).  If the inmate is not satisfied with the response he receives to this written complaint, he can move on to step three, which consists of filing

within 10 days an appeal to the MPCH Grievance and Appeal Coordinator, by mailing the appeal to MPCH's headquarters. In this regard, the Appeal Form has language at the bottom providing that "An appeal must be filled out within 10 working days from receipt of the decision by the HSA or designee." Dkt. 24-2, Defendants' Ex. B – MPCH's Clinical Grievance Mechanism.

As noted, Lozada submitted five written grievances over the course of about two years. On October 17, 2014, Lozada was an inmate at DOC's Old Colony Correctional Center and filed a grievance requesting a referral to the Lemuel Shattuck Hospital so he could replace his custom boots. The HSA designee, Paul Caratazzola, denied his request but agreed to refer the matter to Dr. King. Farag Aff., ¶ 6. Lozada did not appeal the HSA's decision.

On or about January 16, 2015, Lozada was at DOC's MCI-Shirley facility and filed a second grievance requesting a referral so he could obtain medically prescribed boots. The HSA designee, Leticia Wright, denied the grievance on the ground that Lozada could purchase the boots on his own through the DOC. Farag Aff., ¶ 7. Lozada did not appeal this decision.

On or about December 30, 2015, Lozada, now at SBCC, submitted a third grievance asking to be sent to the Brace Clinic at the Shattuck Hospital so that he could obtain custom footwear and orthopedic devices. Lozada was particularly upset that his order

4

for special footwear had not been renewed despite the favorable recommendations of two separate physicians. Id., ¶ 8; Dkt. 24-5; Defendant's Ex. E, Department of Correction Medical/Mental Inmate Grievance Form. On January 26, 2016, Ireland, as SBCC's HSA, issued a decision approving Lozada's request. In particular, Ireland noted that a referral had been submitted for Lozada to have a consultation with the Brace Clinic. Id. Despite numerous inquiries, however, Lozada was never issued a referral. Compl. at ¶ 15.

On May 3, 2016, Lozada submitted a fourth grievance to complain that he still had not been sent to the Brace Clinic despite Ireland's approval of his prior (third) grievance.[2] Farag Aff., ¶ 9. On or about May 6, 2016, Ireland denied this grievance. In doing so, Ireland explained that although a referral had been submitted for the Brace Clinic, MPCH's medical treatment team had subsequently decided to refer Lozada to MPCH's physical therapy clinic instead of the Brace Clinic. Dkt. 24-6; Defendant's Ex. F, Department of Correction Medical/Mental Inmate Grievance Form. Lozada did not appeal this decision.

Finally, the plaintiff submitted a fifth grievance on September 11, 2016. Dkt. 24-8; Defendant's Ex. H, Department of Correction Medical/Mental Inmate Grievance Form. Lozada

---

[2] Lozada also submitted a separate grievance at or around the same time requesting treatment for bronchitis. Ireland approved this grievance and an appointment was scheduled. The complaint does not involve this grievance.

complained that he still had not been sent to the Shattuck Hospital despite having previously received four referrals to the Brace Clinic. He also reported that a cyst in his ankle had flared to the size of a golf-ball, and that staff had refused to provide ice or a wrap aggravating his conditions. Id. Lozada also stated that he was filing the grievance in order to exhaust his administrative remedies before commencing a civil action. Id.

On October 4, 2016, Ireland partially approved the plaintiff's grievance. Ireland informed Lozada that he would be seen by a MPCH medical provider as soon as possible but decided that an internal podiatry referral would be made to determine whether it was necessary to refer Lozada for outside treatment. Id. Lozada did not appeal this decision.[3]

**III. THE COMPLAINT**

The complaint alleges two causes of action. It alleges negligence/malpractice against the defendants on the ground that each negligently failed to provide the plaintiff with adequate medical care. It also alleges that the defendants were deliberately indifferent to plaintiff's serious medical needs, in

_____

[3] Lozada submitted a letter approximately two months following this final grievance. The letter expressed frustration over what Lozada viewed as MPCH's vague and non-informative responses. Lozada also wrote about his ongoing inability to understand why MPCH's providers refused to honor records from the Brace Clinic indicating that he merited the relief he was seeking. Lozada formally requested that he be given access to custom inserts, lace ankle brace, deep and wide work boots, and footwear with high tops and wide shock absorbent heels. No one responded to his letter. Dkt. 5; Exhibits to Plaintiff's State Court complaint re State Court Record, pg. 3; Compl. at ¶ 17.

6

violation of 42 U.S.C. § 1983 and Article 26 of the Massachusetts Declaration of Rights and the Eighth Amendment.

## IV. LEGAL STANDARD

The defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or alternatively for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is to be treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), with the exception that a "'Rule 12 (c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole'" rather than a dismissal based on the complaint alone. *Kimmel & Silverman, P.C., v. Porro*, 969 F. Supp. 2d 46, 49 (D. Mass. 2013) (citing *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2007)). Because a motion for judgment on the pleadings requires "assessment on the merits, we view the facts contained in the pleadings in the light most favorable to the party opposing the motion." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007).

In considering the merits of a motion to dismiss pursuant to Rule 12(c), the district court may consider certain categories of documents without converting the motion into one for summary judgment, including documents whose authenticity is not disputed by the parties, documents that are central to the plaintiff's

claim, and documents that are sufficiently referred to in the complaint. *Id.* at 44. Exhibits attached or incorporated by reference are considered part of the complaint "for all purposes." *Trans-Spec Truck Service, Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (citing Fed R. Civ. P. 10 (c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.")).

It is appropriate to dismiss a complaint under Rule 12(c) when the complaint, through all its facts and allegations taken as true, fails to allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007). Where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the standard of plausibility is met. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The parties here have between them submitted all five of the plaintiff's grievances along with MPCH's responses. The court presumes in that regard that it has been provided all of the relevant grievance-related documents, and notes that the plaintiff has not contended otherwise in his opposition. The defendants have also submitted the pertinent grievance policy in effect through an affidavit from MPCH's Grievance and Appeal Coordinator. As the five grievances and the grievance policy are implicated by

the complaint and central to the plaintiff's claims, the court will consider them in treating the defendants' motion as one for judgment on the pleadings under Rule 12(c). *See Curran*, 509 F.3d at 44.

## V. ANALYSIS

The defendants argue that Lozada's complaint must be dismissed because he has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA precludes "a prisoner confined in any jail, prison, or other correctional facility" from bringing an action "with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Massachusetts also has a corollary law which similarly provides that "[a]n inmate shall not file any claim that may be subject to the subject of a grievance...unless the inmate has exhausted the administrative remedy." M.G.L. c. 127 § 38F. Accordingly, both federal and state law expressly require inmates to exhaust available grievance procedures before going to court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)("exhaustion of available administrative remedies is

required for any suit challenging prison conditions. . ." (citation omitted)); *Porter*, 534 U.S. 516 (2002)("exhaustion is now required for all 'action[s] … brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'" (citation omitted)); *Ryan v. Pepe*, 65 Mass. App. Ct. 833, 838-39 (2006)("Both Federal and State law now expressly require inmates to exhaust available grievance procedures before going to court."). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006)(quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

As noted above, MPCH administered a three-step administrative grievance procedure to address health care related "complaints from inmates concerning medical, dental and mental health services provided by the health vendor staff, subcontractors, specialty referrals, and facilities used by the health vendor." Lozada submitted five written grievances related to his quest to get permission to go to the Brace Clinic at the Shattuck Hospital so that he could replace the orthotic devices he lost in 2014. As such, the grievances unquestionably relate to complaints regarding medical services and/or specialty referrals and thus fall squarely within the scope of the PLRA's exhaustion requirement.

To be sure, Lozada argues in his opposition that the exhaustion requirement does not apply to his grievances because the requirement only applies to complaints regarding "prison conditions." Lozada argues that his complaints/grievances are not about prison conditions but rather more about prison treatment. This argument has no force, however, because the scope of the exhaustion requirement provision is determined in accordance with the administrative remedies procedure applicable to the facility in which the prisoner is confined. As noted above, the DOC grievance procedure in place applies by its terms to complaints regarding medical services and specialty referrals. Accordingly, I find that Lozada's grievances are subject to the PLRA's exhaustion requirement. *See also Smolka v. United States,* 2010 WL 1170438 (D. Mass. 2010) (claims concerning medical services through FMC Devens barred where plaintiff failed first to exhaust administrative remedies).

Turning then to whether Lozada has satisfied the exhaustion requirement, I find that he has not. Indeed, presuming (as I do) that Lozada properly initiated a grievance in each of the four instances where the HSA denied his grievance, there is no dispute that he failed thereafter to follow any of the denials through to completion by mailing an appeal to MPCH's Grievance and Appeal Coordinator. More specifically, Lozada did not appeal after the HSA denied his first two grievances in October 2014 and January

2015.  Then, when Ireland did approve Lozada's third grievance and referred him to the Brace Clinic, Lozada filed a fourth grievance in May 2016 when the referral was not acted upon and did not appeal when Ireland subsequently denied it.  Penultimately, Ireland in October 2016 denied Lozada's fifth and final request for a referral to the Brace Clinic grievance and Lozada did not appeal it either.

In short, Lozada has not fully exhausted his remedies with respect to the charges asserted in his complaint.[4]  Accordingly, dismissal of the plaintiff's claims, without prejudice, is proper. *See e.g., Tolbert v. Clarke*, 685 F. Supp. 2d 244, 250 (D. Mass. 2010).

Because the court finds that dismissal is appropriate on this basis, the court declines to address the other grounds of the defendants' motion.  That being said, it bears noting that the complaint as presently framed contains little to no facts to support Lozada's claim of medical indifference.  Lozada contends that the defendants were deliberately indifferent to his medical needs because they knew he suffered from numerous conditions in

---

[4] Lozada avers in his complaint that he submitted the fifth grievance expressly to exhaust his remedies.  Even crediting that this was his intent, filing the grievance alone fell short of achieving the goal.  The established grievance process explicitly provided that submitting a written grievance amounted to completion only step two of the three-step process.  Moreover, the grievance form itself put Lozada on notice that a written appeal was required to complete the exhaustion requirement. *Cf. Johnson v. Thyng,* 369 Fed. Appx. 144 (1st. Cir. 2010) (PLRA requires that all "available" remedies be exhausted).

his feet and ankles but yet failed to provide him with appropriate orthotic devices and care.

"In order to prove an Eighth Amendment violation based on inadequate medical care, a prisoner must satisfy '(1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need.'" *Reaves v. Department of Correction*, 195 F. Supp. 3d 383, 407 (D. Mass. 2016)(*quoting Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)). To satisfy the objective prong of the inquiry, the plaintiff must have a serious medical need, that is, one that has been diagnosed by a physician or is so obvious that it requires treatment and must show that the care provided by the prison was not "adequate as measured against prudent professional standards." *Nunes v. Massachusetts Dept. of Correction*, 766 F.3d 136, 142 (1st Cir. 2014)(internal citations omitted).

"[E]ven if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014)(*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In an Eighth Amendment context, deliberate indifference implies criminal recklessness or the intentional neglect of a prisoner's health or his serious medical needs. *See Estelle*, 429 U.S. at

104.  So defined, deliberate indifference encompasses "a narrow band of conduct, and requires evidence that the failure in treatment was purposeful, however, there is no requirement that "prison administrators . . . provide care that is ideal, or of the prisoner's choosing."  *Kosilek*, 774 F.3d at 83

Even assuming that the plaintiff's condition satisfies the objective prong of proving a "serious medical need," *see e.g., Evans v. Mendonsa*, No. 11-12121-DJC, 2015 U.S. Dist. LEXIS 18083, at ¶ 10 (D. Mass. Feb. 12, 2015) (finding serious medical need where inmate was diagnosed with plano-valgus and doctor ordered specialized footwear from outside of the facility), the complaint does not, in this court's view, presently allege sufficient facts to show that Ireland or Dr. King were "deliberately indifferent" to that need.  On the contrary, the complaint suggests that Ireland was sympathetic to Lozada's grievances and agreed that he should be referred for treatment.  Similarly, the complaint appears to assert that Dr. King treated the plaintiff and did nothing to stymie his efforts to receive treatment from the Brace Clinic.

To be clear, the court makes no rulings with respect to the merits of any claims set forth in the complaint.  Still, the plaintiff may find it to be of some benefit to reflect on these observations should he intend to take steps to exhaust his remedies and continue the lawsuit.

**VI. CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Judgment on the pleadings (Dkt. No. 23) is ALLOWED and the complaint will be dismissed, without prejudice.

***SO ORDERED.***

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: January 23, 2019